IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| SAMEH HANNA, | ) | |
| | ) | |
| Plaintiff, | ) | NO. 3:18-cv-00325 |
| | ) | |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| MARRIOTT HOTEL SERVICES, INC., et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | | |

# **MEMORANDUM OPINION**

Pending before the Court is Plaintiff's Motion to Toll Statute of Limitations for Opt-In Plaintiffs. (Doc. No. 187, "Motion"), supported by a memorandum of law (Doc. No. 188). Defendants have responded. (Doc. No. 189). The matter is ripe for review.

For the reasons discussed herein, the Court will deny Plaintiff's Motion.

# **BACKGROUND**[1]

Plaintiff filed this Fair Labor Standards Act ("FLSA") suit on behalf of himself and others similarly situated on March 29, 2018, (Doc. No. 1), and filed an amended complaint on April 24, 2018 "to redress Defendants' [alleged] failure to compensate Plaintiff and all others similarly situated for all hours worked over forty (40) in a work week (overtime work)." (Doc. No. 15 at ¶

---

[1] The facts in this section are taken from Plaintiff's Amended Complaint (Doc. No. 15) and are accepted as true for purposes of the Motion. The Amended Complaint is the operative complaint in this matter. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000). To the extent that allegations referred to below are legal conclusions, however, they are not accepted as true but rather are identified as merely what Plaintiff claims and not what the Court is accepting as true for purposes of the Motion.

1

1). On November 6, 2018, the matter was transferred to the undersigned soon after he took the bench. (Doc. No. 69). No dispositive motions were filed before this time.

Defendants are a hospitality enterprise that provides lodging, food, beverage, and other services to the public. (Doc. No. 15 at ¶ 8). Plaintiff alleges that he and all other similarly situated banquet staff were "regularly required" to work overtime hours—an average of 50 to 60 hours each work week. (*Id*. at ¶ 24). The Banquet Staff consists of about 300-400 employees. (*Id*. at ¶ 25). Plaintiff's claim against Defendants is for unpaid overtime in violation of the FLSA.[2] (*Id*. at pp. 5-8).

Defendants filed a motion for summary judgment on November 26, 2018. (Doc. No. 71). On December 11, 2018, Plaintiff filed a motion for conditional class certification. (Doc. No. 79). On February 5, 2019, the Court granted Plaintiff's motion for merits discovery prior to ruling on Defendants' then-pending summary judgment motion.[3] (Doc. No. 97). On March 29, 2019, the Magistrate Judge administratively terminated Defendants' pending summary judgment motion and gave Defendants a response deadline of May 14, 2019 to respond to Plaintiff's then-pending motion for conditional class certification. (Doc. No. 110). After additional briefing, the motion for conditional class certification became ripe for review on June 28, 2019. (Doc. No. 117).

Because of the Court's caseload, the Court was unable to rule on the motion for conditional class certification until February 11, 2020. (Doc. No. 127). At that time, the Court granted Plaintiff's motion in part and conditionally certified a class (also known in the FLSA context as a

---

[2] Although Plaintiff brings collective action as "Count II", a collective action, in and of itself, is not a claim for relief. Instead, it is the procedural vehicle by which Plaintiff is bring his first count—unpaid overtime in violation of the FLSA.

[3] Thereafter, the Court denied Defendants' motion for reconsideration of that Order. (Doc. No. 107).

"collective") of all banquet staff employees of Defendants in Tennessee who: "(1) worked more than 40 hours per week for Defendants in the three-year period preceding the Court's entry of that order; (2) were classified as 'exempt' by Defendants pursuant to 29 U.S.C. § 207(i); and (3) were compensated through the fixed hourly rate plus service charge distribution . . . compensation plan under which Plaintiff was paid." (*Id*. at 1).

Thereafter, the parties filed and fully briefed motions to amend/correct the scope of the certified class. On May 7, 2020, the Court limited the conditionally certified class to include all banquet staff employees of Defendants at the Gaylord Opryland Resort and Convention Center in Nashville, Tennessee who met the above-listed requirements. (Doc. No. 150). After multiple filings, the Court granted approval of the parties' FLSA Collective Action Notice on August 5, 2020. (Doc. No. 160). The window for potential plaintiffs to opt-in to this action ended on October 26, 2020.

Plaintiff now asks the Court to toll the limitations period for opt-in plaintiffs in this case from December 11, 2018 (the date Plaintiff moved for conditional certification) to October 26, 2020 (the end of the opt-in period).

## **LEGAL STANDARD[4]**

---

[4] The undersigned will highlight a few important points regarding the terminology used herein, by reference to part of what he wrote years ago regarding the terminology related to this area of the law:

> On the subject of limitations, courts often use language loosely, interchanging various terms for one another. For maximum clarity, terms must be defined so that important concepts are distinguishable from one another, then used consistently in accordance with those definitions. Herein, legal authorities will be paraphrased in terms of the following definitions to convey the concepts expressed therein, regardless of the terms used (or misused) by the authority being cited.
>
> As used herein, a "statute of limitations" refers to a legislative enactment, or codification thereof, that sets forth a limitations period. . . . A "limitations period"

Under the FLSA, a lawsuit to recover unpaid compensation must "be commenced within two years after the cause of action accrued," unless the action arose "out of a willful violation," in which case the lawsuit must be initiated within three years after accrual. 29 U.S.C. § 255(a). That is to say, for such an FLSA claim, the limitations period is either two or three years, begins running at the time the claim "accrued,"[5] and generally continues to run unabated until the lawsuit is "commenced."

Subject to certain exceptions, an action is "commenced" on the date the complaint is filed. 29 U.S.C. § 256(a). In the case of a collective action, for an individual claimant whose claim is not commenced as of the time the complaint is filed, that claimant's action is considered to be

---

> refers to the length of time-the specific number of days, months, or years in which a given claim can be commenced, as set forth in a statute of limitations. "Limitations" [refers] to the legal doctrine whereby a plaintiff is barred from bringing a claim based upon the lapse of the applicable limitations period. To say that limitations "applies" is to say that, under limitations law, a claim is time-barred. "Limitations law" refers to the entire body of rules, both statutory and judge-made, by which courts determine whether limitations applies in a given case.

Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L.J. 1015, 1017–19 (1997). When using his own words, the undersigned intends to stick generally to this terminology, with the caveat that the caselaw he quotes may not do so and thus may be less precise or looser in their terminology; in particular the case law often uses "statute of limitations" when "limitations period" would be the more precise term in the context at issue.

[5] The FLSA's rule in this regard—that the limitations period begins running as of the date of "accru[al]"—is typical but was not pre-ordained or automatic:

> Contrary to language in some opinions, . . . the date of accrual is not necessarily synonymous with the date that the limitations period begins to run; the limitations period begins to run from the date of accrual only to the extent that applicable law says so. As it turns out, applicable law usually does say so; by judicial decision, by a general statute relating to the running of limitations periods, or by language in the particular statute of limitations itself, a statute's limitations period usually runs from the date of accrual.

Eli J. Richardson, *supra*, at 1036–37.

"commenced" when he or she files written consent to opt in. 29 U.S.C. § 256(b); *see also Kutzback v. LMS Intellibound, LLC*, 233 F. Supp. 3d 623, 628 (W.D. Tenn. 2017) ("[T]he filing of the complaint does not stop the statute of limitations from running for individuals other than the complainant(s); instead, the statute of limitations will continue to run as to other potential opt–in plaintiffs unless or until he or she files written consent to opt into the collective action.").

One way to stop the running of a limitations period is via equitable tolling. Where applicable, "'[e]quitable tolling stops the running of the statute of limitations in light of established equitable considerations.'" *Neal v. Bock*, 137 F. Supp. 2d 879, 885 (E.D. Mich. 2001) (quoting *New Castle County v. Halliburton NUS Corp.,* 111 F.3d 1116, 1125 (3d Cir.1997)). The equitable tolling doctrine is read into every federal statute of limitation. *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). Courts within the Sixth Circuit routinely apply equitable tolling to FLSA claims. *See Kutzback*, 233 F. Supp. 3d at 628, 631 (explaining that the FLSA limitations period is "subject to equitable measures such as tolling" and concluding that a delay beyond the opt-in plaintiffs' control warranted tolling of the limitations period). As its name indicates, equitable tolling is an equitable doctrine that permits courts to extend the statute of limitations on a case-by-case basis to prevent inequity. *Truitt v. Cty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998).

Plaintiffs may seek equitable tolling on a group-wide basis. *Foster v. Sitel Operating Corp.,* No. 3:19-cv-00148, 2020 WL 3485576 (M.D. Tenn. May. 22, 2020) (holding in part the equitable tolling for a group of plaintiffs is not improper). The decision to invoke equitable tolling in a particular case lies solely within the discretion of the trial court. *Id.* at *2.

It is the plaintiff's burden to demonstrate why he or she is entitled to equitable tolling of the limitations period. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). However, these factors are not necessarily comprehensive.

5

# DISCUSSION

Via the Motion, Plaintiff requests the Court to "toll the statute of limitations applicable to the plaintiffs that have opted in to th[e] . . . collective action from December 10, 2018 through October 26, 2020."[6] Doc. No. 187 at 1. Specifically, Plaintiff alleges that "unanticipated and unavoidable delays ultimately pushed back notice to potential opt-in plaintiffs until August 2020" and "[t]he individuals that have now decided to join this lawsuit did not cause or contribute to the delays." Doc. No. 188 at 1.

Defendants contend that Plaintiff's "reliance on delay inherent in the litigation process is not sufficient" and that "the opt-in plaintiffs knew or should have known the basis for their misclassification claim." Doc. No. 189 at 1. Defendants further contend that Plaintiff "is in large part responsible for the amount of time required to resolve conditional certification", by seeking a "nationwide collective action, thus instigating a wave of discovery and briefing." *Id*. at 2.

---

[6] It is worth noting that

> [t]he term "tolling" is used two different ways. First, "tolling" often refers to a postponement of the date the statute begins to run, usually the accrual date. By contrast, some courts use the term "tolling" to refer to suspending the running of the limitations period after it already has begun to run. Some tolling provisions cannot be placed comfortably in either tolling category, and some tolling provisions can either postpone the starting of the clock or stop it after it begins running, depending upon the timing of the event that triggers the tolling. Nevertheless, the distinction exists and is analytically important.

Eli J. Richardson, *supra*, at 1039-1040. Plaintiff here is seeking "tolling" in the former sense; *i.e.*, seeking with respect to each opt-in plaintiff a limited suspension of the running of the limitations period after it had begun running for that opt-in plaintiff. Indeed, it may be that, by definition, equitable tolling is always "tolling" in the latter sense. *See Humphreys v. United States*, 238 F. App'x 134, 138 (6th Cir. 2007) (noting that for claims under 28 U.S.C. § 2255, particular subsections of § 2255 prescribe "the beginning of the [running of the] statute of limitations period, whereas equitable tolling merely stops the statute of limitations after it begins to run.").

Ultimately, assignment of responsibility (or blame) for the delays in the litigation of this case is immaterial to the instant Motion, because the existence of such delays are immaterial to the instant Motion. In short, this is because the record reflects that delays in the litigation of this case (including delays in the decision of the motion for conditional certification) are unrelated to the delay of opt-in plaintiffs to bring a FLSA claim, either independently on their own or by opting in to the class once it was certified. This is because Plaintiff himself insists (under the mistaken impression that it would help) that the opt-in plaintiffs were unaware of the pending FLSA action and the motion for conditional certification. Accordingly, delays in the litigation of this case do not provide justification for equitable tolling.

The Court will unpack this from the beginning. This Court has concluded that equitable tolling is improper when potential opt-in plaintiffs have *not yet* been identified or notified. *See Foster*, 2020 WL 3485576 at *4 (denying motion to equitably toll claims of potential opt-in plaintiffs because it was brought prematurely). However, in the instant matter, this Court has already granted conditional class certification. Doc. Nos. 127, 150. Class members received notification of the collective action, and several plaintiffs returned their consent to opt-in to the lawsuit. Doc. Nos. 161-178. These opt-in plaintiffs are not hypothetical; they are currently before the Court as parties to this action, and it is with respect to these actual opt-in plaintiffs that Plaintiff (litigating on their behalf, as is appropriate for him to do) seeks equitable tolling. It is therefore not premature to rule on a motion for equitable tolling at this stage of the case.

Here, Plaintiff has not met his burden of showing that the opt-in plaintiffs are entitled to equitable tolling of the limitations period.

For a long time, the Sixth Circuit dictated consideration of the following factors in assessing the applicability of equitable tolling: "(1) lack of actual notice of the filing requirement,

(2) lack of constructive knowledge of filing requirement, (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988). Plaintiff relies on these factors. (Doc. No. 188 at 7). But they may no longer be applicable in the Sixth Circuit, at least in cases, like the instant one, that do not involve federal habeas corpus petitions. In 2005, in *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005), the Supreme Court stated that a federal habeas petitioner seeking equitable tolling must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." *Lawrence v. Florida,* 549 U.S. 327 (2007) (quoting *Pace,* 544 U.S. at 418 ). In *Lawrence*, and then again in *Holland v. Florida*, 560 U.S. 631, 649 (2010), the Supreme Court reaffirmed this two-part test, at least for habeas corpus matters.

Two years later, and 24 years after *Andrews* was decided, the Sixth Circuit stated in a footnote in a habeas corpus case:

> The five factors historically used in the Sixth Circuit to analyze equitable-tolling claims were "(1) lack of actual notice of the filing requirement, (2) lack of constructive knowledge of filing requirement, (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir.1988). However, over time we decided that these factors are neither comprehensive nor always relevant; and that each case had to be examined on its own facts. *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir.2002). Even more recently, we held both that *Holland's* two-part test replaced the *Andrews* test, and that meeting all five factors of the *Andrews* test does not necessarily demonstrate the "extraordinary circumstance" that *Holland* requires. *Hall v. Warden, Lebanon Corr. Inst.,* 662 F.3d 745, 749–50 (6th Cir.2011). Thus, we do not find it necessary to discuss the *Andrews* factors; *Holland* is the relevant test.

*Patterson v. Lafler*, 455 F. App'x 606, 609 n.1 (6th Cir. 2012). But not all courts in this circuit are convinced that *Patterson* (or, one might add, any other unpublished decision, like the *Johnson* decision referenced immediately below) rather than *Andrews* should be followed. *See In re*

*Amazon.com, Inc., Fulfillment Ctr. Fair Lab. Standards Act (FLSA) & Wage & Hour Litig.*, No. 14-MD-02504, 2014 WL 3695750, at *2 (W.D. Ky. July 24, 2014) ("This Court is disinclined to substitute the reasoning from an unpublished opinion for a well-established, published one."). And even if it were true that *Patterson* should be followed in habeas corpus cases, that does not necessarily mean that it should be followed in other kinds of cases, such as the instant FLSA collective action; it seems possible to construe any replacement on the five-factor test as applying only to habeas cases. *See Johnson v. United States*, 457 F. App'x 462, 469–70 (6th Cir. 2012) ("Until recently, we used a five-factor inquiry to determine whether a habeas petitioner was entitled to equitable tolling. . . . The Supreme Court's decision in *Holland* replaced the five-factory [sic] inquiry with a two-part test.").

Thus, although the undersigned is inclined to believe that the two-part test now applies in this circuit even outside the habeas context, there is grounds for legitimate debate over whether to use the two-prong test or the five-prong test in a case like this one, and so it is appropriate to conduct the analysis under both tests. *Graham v. Bagley*, No. 3:07CV1313, 2009 WL 983007, at *2 (N.D. Ohio Apr. 13, 2009) ("Graham claims that he is entitled to equitable tolling, and that the Magistrate Judge erred by applying the Sixth Circuit's rigorous five-prong equitable-tolling analysis rather than the Supreme Court's two-prong analysis. The Court finds that, under either analytical framework, Graham is not entitled to equitable tolling."). True, "whether one applies the five-factor or two-factor test may not matter; the latter is like a shorthand version of the former." *Amazon.com, Inc.*, 2014 WL 3695750, at *2. But the Court nevertheless will apply both tests, especially since the outcome conceivably could be different. *See Johnson*, 457 F. App'x at 470 (questioning whether either of two particular prior cases decided under the five-factor test

"would be decided the same way under the two-part test that now controls when equitable tolling applies.").

While Plaintiff focuses heavily on the procedural delays in this case,[7] the key factor (under either test) here is that the opt-in plaintiffs were not diligent in pursuing their rights. Plaintiff states that the potential opt-in plaintiffs—*i.e.*, those persons who were within the class asserted in the motion for conditional certification—did not know that this case was pending. Doc. No. 188 at 8. Specifically, Plaintiff notes that "[Defendants] did not notify any potential plaintiffs about their rights [sic] join this FLSA action. Accordingly, the potential opt-in plaintiffs lacked actual notice of this lawsuit and of their filing requirements." *Id*. He then asserts, persuasively enough, that none of the opt-in plaintiffs[8] is, alternatively, properly chargeable with having had constructive knowledge of this lawsuit. (Doc. No. 188 at 8-9). Since all of the current opt-in plaintiffs were (while the motion for conditional certification was pending) among those "potential" opt-in plaintiffs, Plaintiff has made clear that the opt-in plaintiffs did not know (whether actually or constructively) about this lawsuit—or, thus, about the motion for conditional certification.

Plaintiff asserts this fact to support his request for equitable tolling, believing that it helps his position. Perhaps some Courts have found, at least under certain circumstances, that an opt-in

---

[7] Plaintiff references a quote from *Foster* where this Court noted that "courts commonly find that tolling is appropriate when . . . plaintiffs pursue their claims diligently but nevertheless experience a substantial delay between the time they moved for condition certification and the time the court granted conditional certification/authorized notification to potential class members." 2020 WL 3485576 at *5; Doc. No. 188 at 11. However, this reasoning in *Foster* is inapplicable and irrelevant to the case at bar. In *Foster*, the potential plaintiffs *knew* the FLSA case was pending, and it therefore made sense for such plaintiffs to wait for a decision on class certification before opting-in to the case. This is not the situation in the instant matter, where the opt-in plaintiffs were completely unaware that an FLSA case had been filed.

[8] Here, Plaintiff has shifted his terminology from "potential opt-in plaintiffs" to just "opt-in plaintiffs." But either term would include the current, actual opt-in plaintiffs whom Plaintiff contends should receive the benefits of equitable tolling.

10

plaintiff's lack of knowledge of the FLSA action supports equitable tolling. But the Court must conclude exactly the opposite under the current circumstances. To say that the opt-in plaintiffs were unaware of the FLSA action in which class certification was sought is to say that the pendency of that FLSA action (and motion for class certification) could not possibly have lulled them into forgoing filing a FLSA action within the limitations period. Opt-in plaintiffs, to obtain equitable tolling, need to show that they were diligent in asserting their rights under the FLSA— which is to say, made reasonable efforts to file a FLSA claim before their limitations period expires.

Opt-in plaintiffs (in any case, including the present one) have two options for filing: (1) file their *own* FLSA action within the limitations period; or (2) opt-in to the collective action. But the second option would not have been available unless and until the motion for conditional certification was granted. Suppose an opt-in plaintiff is aware of the collective action and, more specifically, of the pending motion for class certification. Such a plaintiff might be forgiven for awaiting the outcome of the motion for conditional certification rather than filing her own FLSA action; this seems eminently understandable behavior on the part of a layperson and, moreover, actually *helpful* to generally backlogged federal courts. Indeed, there is a recognized policy in favor of FLSA claims being resolved in collective actions rather than individual actions; that is, in fact, why the device of a FLSA collective action exists.[9] For this reason, the undersigned is

---

[9] As one district court within this circuit put it:

> In enacting the FLSA's collective-action mechanism, Congress intended to facilitate the consolidation of small-value claims that would be impractical to pursue on an individual basis. Pursuing this case as a collective action furthers this congressional policy and thus favors class treatment.[24] Further, judicial efficiency favors collective treatment because Plaintiffs plausibly claim that Defendants' FLSA violations flow from uniform policies across Defendant-owned restaurants.

11

generally inclined to be quite forgiving of opt-in plaintiffs who suffer expiration of their limitations period while consciously waiting for a decision on a motion for conditional certification; such an opt-in plaintiff has a strong case for collective certification. In short, an opt-in plaintiff's actual knowledge of a pending motion to conditionally certify an FLSA collective of which she is a member tends to be a pretty good reason not to file her own action.

But there is no such excuse for opt-in plaintiffs lacking actual knowledge of the pending motion. For opt-in plaintiffs who know nothing of a pending FLSA collective action (and motion for conditional certification), such pendency is simply not grounds for leniency. Knowing nothing of the potential alternative of opting in to a collective action, from their perspective they are in the exact same position as plaintiffs with any other kind of claim: it is incumbent upon them to file their own action within the limitations period. And if they fail to do so, they cannot base a claim of reasonable diligence upon the existence of a class action that could not possibly have had any bearing on why they did not file within the limitations period.

The opt-in plaintiffs here failed to diligently pursue their rights, inasmuch as they failed to file their own actions within the limitations period despite having no excuse not to do so. If the opt-in plaintiffs did not know this case existed, they could have and should have filed their own action if they wanted relief. They failed to do so, and they lack the reasonable excuse that they were waiting to see whether they could pursue such relief as members of a class proposed in a motion for conditional certification that was pending while their respective applicable limitations periods were running.

---

*Callaway v. DenOne LLC*, No. 1:18-CV-1981, 2019 WL 2610660, at *4 (N.D. Ohio June 26, 2019).

Although the Court realizes that equitable tolling is appropriate in *certain* circumstances, the instant context is not one of them. If the opt-in plaintiffs knew that a FLSA action or a motion to certify was pending, the Court understands why such plaintiffs might have waited until the motion was decided before going ahead and filing their own FLSA action. Indeed, district courts within this Circuit have granted equitable tolling relief under such circumstances. *See*, *e.g.*, *Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 829 (S.D. Ohio 2007) (concluding that plaintiffs were "reasonable in remaining ignorant of the filing requirement" when defendant informed plaintiffs of the FLSA lawsuit and potential wage violations but never advised them of the filing requirements. "More importantly, Defendant told its employees that notice regarding the lawsuit would be forthcoming.").

The Court believes that this Motion turns primarily on the opt-in plaintiffs (lack of) diligence in pursuing their rights. Under the two-factor test, there remains the factor of whether extraordinary circumstances stood in the way of opt-in plaintiffs timely filing FLSA claims. Here, there were no such extraordinary circumstances. Even if the pendency of a motion for conditional certification could constitute an "extraordinary circumstance" for a potential opt-in plaintiff who was aware of it, it is not an extraordinary (or even *material*) circumstance for one who was not. And for such plaintiffs, nothing at all—and certainly not the pendency of the motion for conditional certification—stood in the way of the opt-in plaintiffs filing their own claims. So the two-factor test is resolved firmly against Plaintiff.

As for the five-factor test, even if it is applicable in a particular case, these factors are not necessarily all relevant. *See Sherwood v. Prelesnik,* 579 F.3d 581, 588 (6th Cir. 2009); *Allen*, 366 F.3d at 401. The Court here perceives the other four factors to be of limited relevance. And in any event, collectively they fail to overcome the opt-in plaintiffs' lack of diligence.

Plaintiff's reliance on the first and second factors is ultimately to no avail. Those factors here concern, respectively, the extent to which the opt-in plaintiffs lacked actual notice or constructive notice of the filing requirements; as noted above, Plaintiff asserts such lack, believing it helps his position. But he does not address the *correct* filing requirement, which is the requirement to file *a* FLSA action within the limitations period. A would-be plaintiff can do so by opting in to a collective action, but where to her knowledge none exists—and indeed even if to her knowledge one does exist—the plaintiff can file her *own* action. The filing requirement here at issue is the requirement for her to file (one way or the other) an FLSA claim within the limitations period, and Plaintiff gives no reason why the opt-in plaintiffs were not on constructive notice of that filing requirement. So the second factor does not cut in Plaintiff's favor.

As to the first factor, it certainly helps Plaintiff that the opt-in plaintiffs have not been shown to have had actual notice of deadline for filing; the existence of actual notice would be especially devastating to his position here. But the absence of actual notice can count for only so much, or else statutes of limitations would become toothless, easily defeated by any plaintiff able to make the hardly far-fetched claim that she did not understand that limitations law required her to meet a particular deadline for filing a claim. Such a claim can go only so far, because the Sixth Circuit has stated that "ignorance of the law alone is not sufficient to warrant equitable tolling." *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir.1991). In short, this factor strikes the Court as one with a large potential downside, but only a small potential upside, for an opt-in plaintiff; it can hurt an opt-in plaintiff's position badly but where (as here) it does not hurt her position, it helps only a little.

As for the alleged lack of prejudice that Defendant would suffer from tolling, (Doc. No. 188 at 9-10), the Court notes that even if there were such an absence, the Court here "look[s]

beyond the absence of prejudice" because, "'[a]lthough absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify tolling is identified, it is not an independent basis for invoking the doctrine . . . .'" *Andrews*, 851 F.2d at 151 (quoting *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152 (1984)).

As for the final factor, the reasonableness of the opt-in plaintiffs' ignorance of the filing deadlines, the Court agrees with Plaintiff (albeit for different reasons) that this factor is of dubious relevance here. (Doc. No. 188 at 10). The Court disagrees, however, with Plaintiff's assessment that it cuts in favor of Plaintiff to the extent it does apply. Plaintiff here focuses implicitly on the reasonableness of the opt-in plaintiffs' ignorance of the deadline for *opting in*. But as discussed above, the deadline of relevance here is the deadline (set by the statute of limitations) for filing a FLSA claim. Plaintiff ignores that deadline and provides no argument as to why any ignorance of the opt-in plaintiffs of such a deadline is reasonable—let alone substantially more reasonable than the typical ignorance putative plaintiffs (being laypersons, after all) may have of filing deadlines provided by limitations law, such that the opt-in plaintiffs' ignorance tends to support the extraordinary remedy of equitable tolling. *See Kutzback*, 233 F. Supp. 3d at 628 ("'Equitable tolling is an extraordinary remedy that is sparingly applied and concerns cases involving extraordinary circumstances.'") (quoting *Bennett v. Runyon*, No. 96–5532, 110 F.3d 63, 1997 WL 133337, at *1 (Mar. 21, 1997).

## CONCLUSION

Although there were many delays in this case, those delays did not affect the opt-in plaintiffs because (as Plaintiff himself states) they were unaware of this action. Accordingly, if the opt-in plaintiffs were interested in asserting their rights under the FLSA, they could have (and

15

indeed should have) filed respective actions of their own within the applicable limitations period. Primarily because they did not do so, Plaintiff fails to meet his burden on this Motion (Doc. No. 187), and the Motion will be denied.[10]

An appropriate order will be entered.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[10] The Court realizes that its analysis may look very different from the analysis seen in other opinions. But the Court respectfully suggests that these opinions are unpersuasive and simply are not accounting for, among other things, the crucial fact that any potential opt-in plaintiff can file her own FLSA claim at any time and need not rely on the existence of a collective action to file one—and therefore is separately accountable for why she did not file her own claim within the limitations period.